Thomas A. Gilson (AZ Bar No. 022460)
**BEUS GILBERT MCGRODER PLLC**
701 North 44th Street
Phoenix, AZ 85008
Telephone: (480) 429-3000
tgilson@beusgilbert.com

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
Shireen Barday*
John McAdams*
75 Rockefeller Plaza
New York, New York 10019
Telephone: (212) 970-2300
duane.loft@pallasllp.com
Shireen.barday@pallasllp.com
john.mcadams@pallasllp.com

Counsel for Petitioners
*[Additional Counsel Listed in Signature Block]*

\*Pro hac vice application forthcoming

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| In re Application of | Case No. |
| 507 Summit LLC; Oasis Focus Fund LP; Quadre Investments, L.P., | **MEMORAANDUM OF LAW IN SUPPORT OF THE APPLICATION FOR AN ORDER OF JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782** |
| Petitioners, for an Order pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding. | |

# TABLE OF CONTENTS

I.  APPLICATION ........................................................................................................ 1

II. FACTUAL BACKGROUND ................................................................................... 3

    A.  The Company and the Merger ..................................................................... 3

    B.  Respondent's Merger Involvement ............................................................. 7

    C.  Petitioners' Cayman Islands Appraisal Proceeding and the Discovery Sought ........................................................................................ 8

III. ARGUMENT ......................................................................................................... 10

    A.  The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782. ................................................................................. 10

        1.  Respondent "Resides" or Is "Found in" This District. ................. 10

        2.  The Discovery Sought Is "For Use" in a Foreign Proceeding. ................................................................................... 11

        3.  Petitioners Are "Interested Persons." ........................................... 12

    B.  The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery. ................................................................................................. 12

        1.  *Intel* Factor I: Respondent Is a Non-Participant in the Appraisal Proceeding. .................................................................. 12

        2.  *Intel* Factor II: The Cayman Court Is Receptive to the Requested Discovery. .................................................................. 13

        3.  *Intel* Factor III: Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions. ........................................ 15

        4.  *Intel* Factor IV: The Subpoena Is Not Unduly Burdensome. .................................................................................. 16

IV. CONCLUSION ..................................................................................................... 19

i

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3
4
*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
    785 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................................... 14

5
6
*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ................................................................................................................... 16

7
*Euromepa, S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995) ........................................................................... 13, 19

8
9
*Facebook, Inc. v. Banana ADS LLC*,
    No. CV 11–03619–YGR (KAW), 2013 WL 1873289 (N.D. Cal. Apr. 30, 2013) .................................................................................................................... 11

10
11
*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d Cir. 2012) .......................................................................... 14

12
*HRCHainan Holding Co., LLC v. Yihan Hu*,
    No. 19-mc-80277-TSH, 2020 WL 906719 (N.D. Cal. Feb. 25, 2020) ................. 18

13
*In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017) ........................................... 11

14
15
*In re Bayerische Motoren Werke AG*,
    No. MC-22-00016-PHX-SPL, 2022 WL 1092804 (D. Ariz. Apr. 12, 2022) ................................................................................................................... 16

16
17
18
*In re Credit Suisse Virtuoso SICAV-SIF in Respect of Sub-Fund Credit Suisse (Lux) Supply Chain Fin. Fund*,
    No. MC-21-00051-PHX-DWL, 2022 WL 1265919 (D. Ariz. Apr. 28, 2022) ................................................................................................................... 10

19
20
*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ................................................................................... 11

21
*In re Ex Parte Appl. Varian Med. Sys. Int'l AG*,
    No. 16-mc-80048-MEJ, 2016 WL 1161568 (N.D. Cal. March 24, 2016) ............. 13

22
23
24
*In Re Ex Parte Application of Nouvel, LLC*,
    No. 22-MC-0004-MCS(EX), 2022 WL 3012521 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022) ................................................................................................ 16

25
*In re Koninklijke Philips N.V.*,
    No.: 17-MC-1681-WVG, 2018 WL 620414 (S.D. Cal. Jan. 30, 2018) .................... 16

26
27
*In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901 (D. Del. Aug. 26, 2021 ....................................................................................... 17

28

*In re Nouvel, LLC*,
   No. 2:22-MC-00004-MCS-E, 2022 WL 2901715 (C.D. Cal. July 22,
   2022) ................................................................................................................ 13

*In re Penner*,
   2017 WL 5632658 (D. Mass. Nov. 22, 2017) ............................................... 14

In re Pioneer Corp. v. Technicolor, Inc., No. LA CV18-04524 JAK (SSx),
   2018 WL 4961911 (C.D. Cal. Sept. 12, 2018) ............................................... 12

*In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*,
   No. C18-1673JLR, 2019 WL 291673 (W.D. Wash. Jan. 23, 2019) ............ 10

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   583 B.R. 803 (Bankr. S.D.N.Y. 2018) .......................................................... 14

*In re Republic of Ecuador*,
   No. C-10-80225, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) ................ 13

*In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*,
   555 F.2d 720 (9th Cir. 1977) ......................................................................... 11

*In Re Sargeant*, 278 F.Supp.3rd 814 (S.D.N.Y 2017) ...................................... 11

*In re Wireless Facilities, Inc. Derivatives Litig.*,
   562 F. Supp. 2d 1098 (S.D. Cal. 2008). ........................................................ 11

*In the Matter of Qunar Cayman Islands Limited v. Athos Asia Event*
   *Driven Master Fund et al.* 2018 (1) CILR 199 ............................................... 2

*In the Matter of Trina Solar Limited* (Unreported, Grand Court, Segal J,
   23 September 2020) ........................................................................................... 2

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ........................ passim

*Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015) ..................................................... 11

*Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585 ........................................... 3

*Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782.*, No. 18-MC-
   80134-NC, 2018 WL 6660068 (N.D. Cal. Dec. 19, 2018) ......................... 11

*Siemens AG v. W. Digital Corp.*,
   No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973 (C.D. Cal. Nov.
   4, 2013) ..................................................................................................... 13, 16

*Stockinger v. Toyota Motor Sales, U.S.A., Inc.*,
   No. 18MC00084VAPKSX, 2018 WL 6517106 (C.D. Cal. Aug. 15,
   2018) ................................................................................................................ 18

*TS Prod., Inc v. Champion Fiberglass, Inc.*,
   309 F.R.D. 527 (N.D. Cal. 2015) .................................................................. 18

iii

*Universal Church, Inc. v. Standard Constr. Co. of San Francisco, Inc*,
    No. 14-CV-04568-RS (KAW), 2015 WL 6167968 (N.D. Cal. Oct. 21,
    2015).................................................................................................................................18

1

## I.    <u>APPLICATION</u>

2

3       507 Summit LLC, Oasis Focus Fund LP, and Quadre Investments, L.P.  ("**Petitioners**")

4   respectfully submit this Application pursuant to 28 U.S.C. § 1782 ("**Section 1782**") seeking a

5   Court order that authorizes Petitioners to serve the proposed subpoena (the "**Subpoena**"),

6   attached to the Declaration of Yonah Jaffe ("**Jaffe Decl.**") as Exhibit A, on Alex Nanyan Zheng

7   ("**Respondent**"). The Subpoena seeks document and deposition testimony for use in connection

8   with an appraisal proceeding filed in the Grand Court of the Cayman Islands (the "**Cayman**

9   **Court**") on July 15, 2022 (the "**Appraisal Proceeding**").

10      In the Appraisal Proceeding, Petitioners (along with other dissenting shareholders) seek

11  a determination of the fair value of their former shareholdings in 51job, Inc. ("**51job**" or the

12  "**Company**"), a Cayman Islands company that was taken private for inadequate consideration

13  and delisted from the New York Stock Exchange on May 6, 2022. Petitioners' shares were

14  forcibly canceled through a merger (the "**Merger**") orchestrated by company insiders, their

15  affiliates, private equity funds and the Company's majority shareholder Recruit Holdings Co.,

16  Ltd. ("**Recruit**") (together, the "**Participants**"). The proxy statement explains that the purpose

17  of the Merger was to enable the Participants to acquire 100% control of the Company. Jaffe Decl.

18  Ex. B at 9. The Petitioners and other dissenting shareholders believe that the Merger was coercive

19  and fundamentally unfair to minority shareholders with respect to both the Merger price—which

20  significantly undervalued 51job's shares—and the process to approve the Merger.

21       As both an individual Participant and partial owner and director of other entity

22  Participants, Respondent is an individual responsible for orchestrating the Merger at the

23  inadequate price. Given Respondent's central role in the Merger, he has documents and

24  knowledge that are relevant to the issues of fair value and the Merger approval process that are

25  germane to the Appraisal Proceeding.

26      Petitioners' Application meets all the statutory requirements of Section 1782 because

27  (i) Respondent "resides or is found" in this District; (ii) the Requested Discovery is "for use" in

28  a foreign proceeding, namely the Appraisal Proceeding; and (iii) Petitioners, each of which is a

party to the Appraisal Proceeding, easily meet the standard for an "interested person" under the statute. Moreover, each of the Supreme Court's factors that guide this Court's exercise of discretion under Section 1782 weighs decisively in favor of granting Petitioners' Application. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) ("*Intel*").

*First*, Petitioners seek discovery from a "non-participant" in the foreign action. *Id.* Respondent is not a party in the Appraisal Proceeding or otherwise subject to the jurisdiction of the Cayman Court. This is a sufficient basis for the Court to hold that the first factor is satisfied.

*Second*, the Cayman Court is receptive to the assistance afforded by U.S. federal courts through Section 1782. Indeed, the Directions Order from the Grand Court in the Appraisal Proceeding specifically contemplates that the parties will use Section 1782 to obtain evidence for use in that proceeding, the Petitioners have done so in related Section 1782 proceedings, and the Company has intervened in those actions, in each case, expressly taking no position as to the propriety of Section 1782 discovery. Mr. Samuel Dawson (a partner at one of the Cayman firms litigating the Appraisal Proceeding) explains in his declaration that the Cayman Court has repeatedly emphasized that judges in appraisal proceedings require access to all available information concerning the valuation of the subject company, in order to determine the fair value of the former shareholdings of the dissenting shareholders.  For instance, in recent merger appraisal cases commenced pursuant to Section 238 of the Cayman Islands Companies Act (as revised) ("**Section 238**"), the Cayman Court has considered, *inter alia*, documents that may be relevant to the valuation of the shares at issue and evidence as to whether the deal process itself was open, competitive, and fair. Dawson Decl. ¶¶ 14, 16; *see also* Dawson Decl. Ex. 13, *See In the Matter of Qunar Cayman Islands Limited v. Athos Asia Event Driven Master Fund et al.* 2018 (1) CILR 199 ("it should be a general obligation of the company to search for and produce all documents relevant to fair value."); Dawson Decl. Ex. 14, *In the Matter of Trina Solar Limited* (Unreported, Court of Appeal, 4 May 2023) ("in my view, it is of fundamental importance,

particularly in a management buyout, that companies give full disclosure of all documents relating to the sale process (including the market check) and the relevant communications with the financial advisers."). Such evidence regularly includes document productions from third parties not subject to the jurisdiction of the Cayman Court. Dawson Decl. ¶¶ 13, 15; (discussing *Qihoo 360 Technology Co. Ltd.* 2017 (2) CILR 585).

*Third*, the Application is not concealing any improper attempt to circumvent any foreign discovery restrictions on proof gathering.  *Intel*, 542 U.S. at 264–65. Rather, the scope of discovery is broad under Cayman law, and Cayman courts welcome the introduction of foreign evidence obtained through Section 1782. The requested discovery does not implicate any privilege or special protection that would make it improper under Cayman Islands law.

*Fourth*, the proposed discovery is not unduly burdensome. *Id.* at 265. Respondent is a Participant (both individually and as an owner and director of member entities) who orchestrated the Merger. To the contrary, the Subpoena is narrowly tailored to seek information directly relevant to the critical issues in the Appraisal Proceeding—documents and testimony regarding fair value and the merger process.

At bottom, the Application satisfies the statutory requirements of Section 1782 and the *Intel* factors, and it is fully consistent with the policies behind Section 1782. Accordingly, the Application should be granted.

## II.   FACTUAL BACKGROUND

### A.   The Company and the Merger

Based in Shanghai and founded in 1998, 51job is a leading provider of human resources services in the People's Republic of China ("**PRC**"). The Company's online recruitment platforms are well-known throughout the global Chinese-speaking world. Prior to the Merger, 51job's shares were listed (through American Depository Receipts) on the NASDAQ exchange under the symbol "JOBS."

In September 2020, during the height of the COVID-19 pandemic, DCP Capital Partners II, L.P. (collectively with its affiliates, "**DCP**"), an Asian private equity firm, made an offer to take the Company private for $79.05 per share. Jaffe Decl. Ex. B at 26. On September 18, 2022, Ocean Link[1] (a group of entities, including Respondent individually and entities that Respondent owns and is a director of) expressed interest in participating in the Merger. *Id.* at i–ii, E-5. In response, the Company formed a special committee consisting of two purportedly independent directors, Li-Lan Cheng and Eric He (the "**Special Committee**"), to evaluate and consider the proposal. *Id.* at 27.

On May 1, 2021, counsel for DCP requested the Special Committee's consent to form a buyer consortium (the "**Buyer Group**"), which included Ocean Link (which includes Respondent) and Mr. Rick Yan, the Company's director, CEO, and president. *Id*. at 31. On May 4, 2021, the Special Committee granted consent, allowing DCP to form the Buyer Group. *Id*. On the same day, DCP updated its offer to reflect the additional buyers. *Id.* Notwithstanding the additional buyers, the Merger consideration for the updated offer remained at $79.05 per share. *Id*. Recruit, a Japanese online recruitment company that held a 35% stake in the Company, agreed to participate in the transaction and join the group taking the Company private. Through the leveraged take-private transaction, Recruit increased its shareholding in the Company from 34.8% to 39.9% (or 45.4% including convertible bonds) while extracting cash. Jaffe Decl. Ex. G. 51job and the Participants, including the Buyer Group (which included the entity on whose Board Respondent sat), signed a Merger agreement on June 21, 2021, to take the Company private for the original offer price of $79.05 per share. Jaffe Decl. Ex. B at 35.

Petitioners and other dissenting shareholders believe that the original proposed price of $79.05 per share severely undervalued the Company and was opportunistically timed to take advantage of the temporary economic dislocation caused by COVID-19 to deprive minority

---

[1] "**Ocean Link**" is: Nanyan Zheng (Respondent); Tianyi Jiang; Alliance Ascend GP Limited; Alliance Ascend L.P.; Ocean Link Partners II GP Limited; Ocean Link Partners II GP, L.P.; Ocean Link Partners II, L.P.; Ocean Ascend Holding Limited; and Ocean Ascend Limited.  Jaffe Decl. Ex. B at i–ii.

shareholders of the fair value of their ownership stakes in the Company. Further, the Merger proposal contained glaring procedural deficiencies.

For example, the Merger agreement did not require approval by a majority of the minority shareholders ("**MoM Protection**"), a common corporate law device used to protect minority shareholders from controlling shareholders. *See id.* at 33 ("Upon further discussions, the Special Committee decided to forgo the 'majority of the minority vote' voting requirement").

Compounding the lack of MoM Protection, the Participants owned almost all the votes needed to consummate the Merger. Under Cayman law, the Merger needed to be approved by two-thirds of the shares present at an extraordinary general meeting ("**EGM**") called to consider the proposal. Given the Participants, including the Buyer Group and their affiliates, controlled 56.1% of the vote, it was unsurprisingly approved. *Id.* at 35. Thus, the Merger was, for all intents and purposes, a foregone conclusion. And while the Merger agreement purported to require a 30-day go-shop period, the Participants, which comprised a majority of the voting shares, ***had already agreed contractually not to vote*** for any alternative transaction. *Id.* This assured no market interest for any alternative proposal, which would have been futile in the face of the pre-commitments.

The proxy statement projected a Merger closing date in the second half of 2021. *Id.* at 18. In line with this anticipated closing date, the Company, on July 6, 2021, filed a Schedule 13E-3 form and draft proxy statement with the Securities and Exchange Commission (the "**SEC**"), which incorporated a fairness opinion authored by Duff & Phelps, LLC. *See* Jaffe Decl. Ex. D. However, after the filing of the Schedule 13E-3 form, the Company ceased communications with its shareholders regarding the Merger proposal. This unusual and unexplained radio silence continued despite numerous and consistent requests from various shareholders.

On November 8, 2021, approximately four months after the filing of the Schedule 13E-3 form, the Company finally issued a press release vaguely disclosing that certain members of the Buyer Group had been in consultation with Chinese regulators on the "recent regulatory changes" in the PRC that might be applicable to the Merger proposal. Jaffe Decl. Ex. H at 1. The overdue

press release did not explain what "regulatory changes" it was alluding to. It was subsequently disclosed in the proxy statement that it was Ocean Link and DCP who had initiated the consultation.  Jaffe Decl. Ex. C at 38.

Without providing any adequate explanation regarding the lack of communication or statements regarding regulatory changes, on January 12, 2022, the Buyer Group revised its offer to take the Company private by reducing the Merger consideration to $57.25 per share. *Id.* This new offer represented a drastic 28% reduction from the original offer price of $79.05. Then, on March 1, 2022, the Company announced it had agreed to a revised Merger price of $61.00 per share. *Id.* at 49; Jaffe Decl. Ex. F at 1. Even though the Merger price fell significantly outside the range of fair value ($73.18 to $86.94) provided in Duff and Phelps's original fairness opinion from only six months earlier, Duff & Phelps provided an updated fairness opinion to support the $61.00 per share Merger price. Jaffe Decl. Ex. C at C-5. The revised Merger agreement again contained no MoM Protection. *Id.* at 35. Further, the go-shop provision, included as mere formality, was reduced by half, to 15 days. *Id*. at 40. The basis on which the Buyer Group reneged on the original Merger proposal to secure its windfall deal, including any legal rationale by which 51job permitted such a violation of the Buyer Group's contractual obligation to pay the consideration provided in the original merger agreement, was never explained to the Company's shareholders or otherwise.

On March 29, 2022, the Company filed a Schedule 13E-3 with the SEC attaching a revised proxy statement that contained the Special Committee's recommendation that shareholders approve the revised Merger offer. Jaffe Decl. Ex. E.  An EGM of the Company's shareholders was held on April 27, 2022. Given that the Participants owned 56.1% of the vote, in combination with the lack of MoM Protection, the Merger was predictably approved by the Company's shareholders. Jaffe Decl. Ex. I. The Merger was officially consummated on May 6, 2022, and the Company was delisted from the NASDAQ exchange. Jaffe Decl. Ex. J.

**B.**     <u>Respondent's Merger Involvement</u>

As both an individual member and an owner and director of the Ocean Link entities, Respondent was part of the Buyer Group and a central figure in the Merger. As the July 2021 proxy statement sets forth, Respondent and his funds were involved in the Merger since its conception, participating in due diligence, communicating with the Special Committee, receiving financial information, and strategizing with other Participants. For example:

- Four days after the Company started exploring the possible Merger, on September 18, 2020, Ocean Link (the group of entities and individuals that includes Respondent) expressed interest in participating in the Merger. Jaffe Decl. Ex. B at i–ii, E-5.

- On October 6, 2020, the Special Committee approved a confidentiality agreement that was sent to Ocean Link and DCP so they could review materials and conduct due diligence of the Company. *Id.* at 28.

- On October 10, 2020, affiliates of Ocean Link and DCP entered into a confidentiality agreement with the company to receive information in connection with the Merger. *Id.*

- Between October 10, 2020 and October 12, 2020, Ocean Link commenced due diligence of the Company, interviewing members of the Company's management. *Id.*

- On April 5, 2021, in connection with the Merger, an Ocean Link affiliate entered into a non-disclosure agreement with Recruit. *Id.* at 30.

- On April 6, Ocean Link participated in a call with members of the Company and Recruit regarding Recruit's support of the merger. *Id.*

- On April 13, 2021, the Company granted Ocean Link access to an online data room to conduct due diligence. *Id.*

- Between April 14, 2021 and May 14, 2021, Ocean Link conducted onsite and remote due diligence of the Company. *Id.*

- Between April 15, 2021 and April 26, 2021, Ocean Link attended a series of onsite due diligence meetings. *Id.* at 30.

- On April 27, 2021 representatives of Ocean Link held a meeting with Recruit, Mr. Yan, and DCP to discuss "certain key terms and principles in connection with the Proposed Transaction . . . ." *Id.*

- Respondent individually and his fund Ocean Link ultimately approved their investments to join the Buyer Group. *Id.* at ii.

- Between August 3, 2021 and August 5, 2021 "representatives of DCP and Ocean Link held discussions with representatives and advisors of Mr. Yan and the Company" Jaffe Decl. Ex. C at 38.

Based on Respondent's central involvement as a member of the Buyer Group and principal of Ocean Link as outlined in the proxy statement, there is no question that Respondent received documents and garnered knowledge relevant to the issues of 51job's fair value and the Merger process.

### C.      Petitioners' Cayman Islands Appraisal Proceeding and the Discovery Sought

On July 15, 2022, the Appraisal Proceeding commenced in the Cayman Islands under Section 238. Dawson Decl. Ex. 4. Petitioners (along with the other dissenting shareholders) and the Company each have retained and disclosed a valuation expert to assist the Cayman Court in determining the fair value of the dissenting shareholders' former shareholdings in the Company. Dawson Decl. ¶¶ 11–13.

Under Cayman law, as part of the process of considering valuation methodologies proffered by the respective valuation experts, the Cayman Court will also consider evidence as to whether the deal process itself was open, fair, competitive, and robust. *Id.* ¶¶ 14–20. Petitioners and the other dissenting shareholders will have the opportunity to present, *inter alia*, documentary evidence, expert valuation evidence, witness testimony, and legal arguments to the Cayman Court. Cayman law permits litigants to obtain discovery from third parties located in the Cayman Islands, but the Cayman Court does not have the power to compel discovery from third

parties that are not subject to its jurisdiction, such as Respondent. *Id.* ¶¶ 27–30. Importantly, in the Appraisal Proceeding, the Cayman Court's Directions Order specifically contemplates that the dissenting shareholders will make use of Section 1782 jurisdiction. *Id.* ¶ 25. Given Respondent's involvement as outlined above, obtaining both document and deposition discovery from him is imperative to the Appraisal Proceeding.

Accordingly, Petitioners seek leave of this Court to serve the Subpoena on Respondent for documents and deposition testimony relevant to the fair value and merger process for 51job. The Subpoena seeks documents and communications bearing directly on the core issues of the Appraisal Proceeding, including the investment materials Respondent was provided as an individual Participant and a principal of Ocean Link concerning the Merger and the Company's valuation. The Subpoena further seeks documents pertaining to any "regulatory changes" in the PRC or market conditions that precipitated the dramatically reduced price in Amendment No. 1 to the Original Merger Agreement. Respondent has the legal right and practical ability to obtain such documents from Ocean Link to the extent they are not already in his personal possession, and they are therefore within his possession, custody, or control. *See uSens, Inc. v. Shi*, Case No. 18-cv-01959-SVK, 2019 WL 13201984, at *2 (N.D. Cal. Apr. 24, 2019) (holding that corporate executive had possession, custody, or control over company documents he could obtain in the course of his employment); *Landreth v. Lehil*, No. 2:20-CV-00472-DMC-P, 2023 WL 2480644 (E.D. Cal. Mar. 13, 2023) (compelling employee to produce documents held by his employer that he had the ability to obtain by requesting them); *U.S. Philips Corp. v. Synergy Dynamics Int'l, LLC*, Case No. 2:05-cv-00577-PMP-GWF, 2007 WL 9734384 (D. Nev. July 9, 2007) ("a defendant officer of a corporation can be compelled to produce relevant corporate documents in his possession, custody and control as an officer and which he has the practical ability to produce"). In this regard it is relevant that the consultation was initiated by Ocean Link and DCP, not the Company (or other Participants) and the Company is therefore unlikely to have all the documents related to it.

9

## III.    ARGUMENT

Section 1782 of Title 28 of the United States Code permits U.S. district courts to grant discovery for use in a pending foreign proceeding or a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 243 (2004). A Section 1782 application must satisfy three "modest prima facie elements": (1) the discovery is sought from someone who resides or is found within the District; (2) the discovery is for use before a foreign tribunal; and (3) the applicant is an "interested person."  *In re Credit Suisse Virtuoso SICAV-SIF in Respect of Sub-Fund Credit Suisse (Lux) Supply Chain Fin. Fund*, No. MC-21-00051-PHX-DWL, 2022 WL 1265919, at *2 (D. Ariz. Apr. 28, 2022). If these statutory requirements are met, the court then considers four discretionary "*Intel*" factors.  *Intel*, 542 U.S. at 264–65.

### A.    The Application Satisfies the Three Statutory Requirements of 28 U.S.C. § 1782.

#### 1.    Respondent "Resides" or Is "Found in" This District.

The first statutory requirement is satisfied when the respondent "resides or is found" in the District.  *See, e.g.*, *In re PJSC Uralkali for an Ord. Pursuant to 28 U.S.C. § 1782*, No. C18-1673JLR, 2019 WL 291673, at *3 (W.D. Wash. Jan. 23, 2019) (holding first statutory factor was satisfied because respondent "maintains a residence in this district"). According to a licensed private investigator's database search, Respondent is a "current resident" of a home in this District, which Respondent purchased in 2021. Burtis Decl. ¶ 3. Aside from being listed as a "current resident" of this District, Respondent is also the sole Member of Zheng Family LLC, an active Arizona-registered company, and a Principal Owner of the Phoenix Rising minor league soccer team. *Id.*

Respondent thus "resides or is found" in this District.[2]

---

[2] There does not appear to be binding precedent in this District on whether the "resides or is found" language in Section 1782 means the court must have personal jurisdiction over the party from whom Petitioners seek discovery.  However, courts in other jurisdictions have found that Section 1782's statutory prerequisite is coextensive with personal jurisdiction.  *See, e.g.*, *In re*

**2.   The Discovery Sought Is "For Use" in a Foreign Proceeding.**

A Section 1782 application establishes the "for use" requirement by showing that the requested discovery may be submitted to and relied on by the foreign tribunal.  "Thus, applicants must show that the material requested is tethered to a specific foreign proceeding and is relevant." *Qualcomm Inc for an Order Pursuant to 28 U.S.C. § 1782*, No. 18-MC-80134-NC, 2018 WL 6660068, at *2 (N.D. Cal. Dec. 19, 2018); *see also Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015) ("for use" element satisfied if materials sought can "be employed with some advantage or serve some use in the proceeding").[3] A Section 1782 petitioner is not required to demonstrate that the information sought would be discoverable or admissible in the foreign proceedings. *In re Request for Judicial Assistance from the Seoul Dist. Criminal Court*, 555 F.2d 720, 723 (9th Cir. 1977) ("[F]ederal courts, in responding to [§ 1782] requests, should not feel obliged to involve themselves in technical questions of foreign law relating to . . . the admissibility before [foreign] tribunals of the testimony or material sought."). Instead, the district court considers "the *practical ability* of an applicant to place a beneficial document—or the information it contains— before a foreign tribunal." *In Re Sargeant*, 278 F.Supp.3rd 814 at 822 (S.D.N.Y 2017). Petitioners will use the discovery obtained by this Application in the Appraisal Proceeding. *See* Dawson Decl. ¶13. The Requested Discovery is therefore plainly "for use" in the Appraisal Proceeding, and Petitioners have thus satisfied the second statutory requirement. *See, e.g., In re*

---

*del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("We hold, accordingly, that § 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process."). Thus, alternatively, this factor is satisfied by the fact that this Court has general personal jurisdiction over Respondent.  General jurisdiction can be established by an individual's domicile, *Facebook, Inc. v. Banana ADS LLC*, No. CV 11–03619–YGR (KAW), 2013 WL 1873289, at *3 (N.D. Cal. Apr. 30, 2013) or, in the alternative, his or her "continuous and systematic" contacts with the forum.  *In re Wireless Facilities, Inc. Derivatives Litig.*, 562 F. Supp. 2d 1098, 1101, 1103 (S.D. Cal. 2008).

[3]   *See also In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (holding that under "for use" prong, the district court considers "the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal.").

*Application of ICM SPC on Behalf of Ancile Special Opportunity and Recovery Fund Segregated Portfolio*, No. MC-23-00023-PHX-DLR, 2023 WL 4182160, at *1 (D. Ariz. June 26, 2023) (granting Section 1782 application and finding discovery was for use in a foreign proceeding pending in the British Virgin Islands).

### 3.  Petitioners Are "Interested Persons."

"Litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256; *In re Pioneer Corp. v. Technicolor, Inc.*, No. LA CV18-04524 JAK (SSx), 2018 WL 4961911, at *5 (C.D. Cal. Sept. 12, 2018) ("An 'interested person' includes, but not limited to, parties in a foreign proceeding.") (citing *Intel*, 542 U.S. at 256). Because Petitioners are parties in the Appraisal Proceeding, Dawson Decl. ¶ 10, they are "interested persons."

### B.  The *Intel* Discretionary Factors Weigh in Favor of Granting Discovery.

Once the statutory threshold requirements of Section 1782 are met, a district court considers, in its discretion, whether to order the requested discovery. To do this, the district court looks to the four "*Intel* factors." *See Intel*, 542 U.S. at 264. Each of the *Intel* factors is discussed below and weighs in favor of granting the Application.

### 1.  *Intel* Factor I: Respondent Is a Non-Participant in the Appraisal Proceeding.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. The reason for this inquiry is because "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a non-participant in the matter arising abroad." *Intel*, 542 U.S. at 264.  Respondent is not a party in the Appraisal Proceeding, and therefore will not be subject to party discovery in the Appraisal Proceeding. Dawson Decl. ¶ 29. Further, because Respondent is a non-party who does not reside in the

Cayman Islands, the Cayman Court will not have jurisdiction to compel discovery from him. *Id*. Petitioners, therefore, have no practical way to obtain the highly relevant evidence in Respondent's possession, custody, or control, other than discovery by way of Section 1782. Accordingly, this first *Intel* factor weighs in favor of granting the Application. *In re Nouvel, LLC*, No. 2:22-MC-00004-MCS-E, 2022 WL 2901715, at *1 (C.D. Cal. July 22, 2022) ("some parties here are not party to the foreign litigation, and based on the parties' submissions of expert testimony, the Court has some doubt that the requested discovery is or will become available in the foreign courts"); *In re Republic of Ecuador*, No. C-10-80225-MISC CRB (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("[Discovery target] is not a party in the international arbitration, and therefore this factor weighs in the [petitioner's] favor.").

### 2. *Intel* Factor II: The Cayman Court Is Receptive to the Requested Discovery.

The second *Intel* factor requires courts to consider whether the "nature, attitude, and procedures" of the foreign tribunal indicate that it is receptive to Section 1782 assistance. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81 (2d Cir. 2012). This factor "focuses on whether the foreign tribunal is willing to consider the information sought." *In re Ex Parte Appl. Varian Med. Sys. Int'l AG*, No. 16-mc-80048-MEJ, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016). There is a strong presumption that foreign tribunals will be receptive to evidence obtained in the United States. "[W]hen evaluating whether foreign tribunals would accept U.S. assistance," courts do not look for proof that the foreign tribunal will accept the evidence; to the contrary, they "'look for 'authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782.'" *Siemens AG v. W. Digital Corp.*, No. 8:13–cv–01407–CAS–(AJWx), 2013 WL 5947973, at *3 (C.D. Cal. Nov. 4, 2013) (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)) (emphasis in original). Absent "*authoritative proof* that a foreign tribunal would reject evidence obtained with the aid of section 1782," courts are to "err on the side of permitting discovery." *Varian Med. Sys.*, 2016 WL 1161568, at *4

13

(emphasis added); *see also In re Nokia Techs. Oy*, No. 21MC1487 (MSB), 2022 WL 788702, at *2 (S.D. Cal. Mar. 15, 2022). As numerous courts across the country have held, Cayman Islands courts, and the Cayman Court in the Appraisal Proceeding in particular, are receptive to discovery under Section 1782.[4]  The receptivity of the Cayman Court to evidence obtained through this Application is no different.

 As explained in the Dawson Declaration, Cayman courts are receptive to using evidence obtained through US discovery procedures. Dawson Decl. ¶¶ 21–26. Indeed, the Cayman Islands Court of Appeal ("**CICA**") expressly held in *Lyxor Asset Management S.A. v. Phoenix Meridian Equity Limited*, that the right to obtain full discovery, including pre-trial deposition testimony, under Section 1782 "is a right conferred by U.S. law-it is not a right conferred by, or to be withheld under Cayman law." *Id.* ¶¶ 22–24 (citing *Lyxor*) (emphasis added). Moreover, the CICA has underscored that third-party materials are relevant in Section 238 proceedings. *Id.* ¶ 21 (*quoting Re Qunar Cayman Islands Limited (Unreported*, CICA, April 10, 2018, CICA No 24 of 2017) for the proposition that "if third party valuations in the possession of the Company are relevant, so are third party valuations not in the possession of the Company. . . ."). CICA decisions are binding on the Cayman Court. *Id.* ¶ 14.

---

[4] *See also In re Platinum Partners Value Arbitrage Fund L.P.*, 583 B.R. 803, 816 (Bankr. S.D.N.Y. 2018) ("Liquidators present unrebutted evidence that, far from being hostile to Cayman litigants seeking evidence under U.S. law, Cayman courts are in fact receptive to evidence obtained through U.S. discovery procedures, even if such evidence may not be discoverable under Cayman law."); *Gushlak v. Gushlak*, 486 F. App'x 215, 218–19 (2d Cir. 2012) (affirming use of Section 1782 applications in connection with Cayman divorce proceedings); *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (granting Section 1782 applications seeking documents for use in Cayman proceedings); *In re Penner*, 2017 WL 5632658, at *3 (D. Mass. Nov. 22, 2017) (finding that the Cayman Court "is open to receiving § 1782 discovery"). Indeed, district courts in the Ninth Circuit have recently granted Petitioners' Section 1782 applications for both document discovery and a deposition for use in the Appraisal Proceeding in the Cayman Islands. *See In re Application of Oasis Focus Fund LP*, Case No. 5:23-mc-00003-JGB(SHKx), ECF No. 10 (C.D. Cal. Apr. 11, 2023) (order granting Petitioners' Section 1782 application arising from the Appraisal Proceeding in the Cayman Islands); *In re Application of Oasis Focus Fund LP*, Case No. 2:23-mc-00032-MEMF-JC, ECF No. 14 (C.D. Cal. Mar. 28, 2023) (same).

As noted, the Cayman Court will consider all evidence that may be relevant to the valuation of the shares at issue in the Section 238 proceeding. *Id.* ¶¶ 13–20. For example, the CICA held in *Qihoo 360 Technology Co. Ltd*. 2017 (2) CILR 585 that "[t]he sole task of the court is to determine the fair value of the dissenters' shares. To do that, it needs full information." *Id.* ¶ 14 (discussing *Qihoo* (Dawson Decl. Ex. 8)). This process of considering all relevant information often requires significant discovery. As the CICA noted in *Shanda Games Limited* [2018 (1) CILR 352], "[s]ince the fair value is not necessarily the same as the merger price or the price at which the shares were trading before the market in them was affected by knowledge of the merger, it is inevitable that the determination will involve an assessment of a substantial quantity of information relating to the financial affairs of the company whose shares are to be valued." Dawson Decl. Ex. 7 at 368.

The Cayman Court will also consider evidence as to whether the deal process itself was open, competitive, and fair. *See* Dawson Decl. Ex. 1 (*In the Matter of Nord Anglia Education, Inc*. (Unreported, 17 March 2020)) (considering several conduct-related factors when considering the reliability of the deal price as a guide to the fair value of the dissenting shareholders' shares); *see also* Dawson Decl. Ex. 14 at 101 (*In the Matter of Trina Solar Limited* (Unreported, Cayman Island Court of Appeal, 4 May 2023)) (after considering evidence of process flaws, the Court of Appeal held that it did not "see that any reliance can safely be placed on the Merger Price.").

Here, the Cayman Court, in the Directions Order entered in the Appraisal Proceeding following a hearing, specifically acknowledged and approved the prospect of the parties utilizing Section 1782 discovery requiring that if used, parties made all reasonable efforts to prosecute them expeditiously. Dawson Decl. ¶¶ 21–25. As a result, there can be no plausible argument that the Cayman Court is not open to Section 1782 discovery in the Appraisal Proceeding.

### 3.  *Intel* **Factor III: Petitioners Are Not Circumventing Foreign Proof-Gathering Restrictions.**

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

United States." *Intel*, 542 U.S. at 265.  Importantly, the third *Intel* factor is satisfied unless the foreign court actively prohibits the petitioner from gathering the information sought.  *In re Koninklijke Philips N.V.*, No.: 17-MC-1681-WVG, 2018 WL 620414, at *2 (S.D. Cal. Jan. 30, 2018); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons [that] do not necessarily signal objection to aid from United States federal courts."); *Siemens AG*, 2013 WL 5947973, at *3. Moreover, "an applicant need not attempt to exhaust the discovery procedures available in the foreign court before invoking section 1782 in federal court." *In re Ex Parte Application of Nouvel, LLC*, No. 22-MC-0004-MCS(EX), 2022 WL 3012521, at *4 (C.D. Cal. June 8, 2022), *report and recommendation adopted*, 2022 WL 2901715 (C.D. Cal. July 22, 2022). The discovery sought does not attempt to circumvent any proof-gathering restrictions in the Cayman Islands. To the contrary, Cayman courts are receptive to Section 1782 discovery and the Cayman Court in the Appraisal Proceeding has "already considered and approved the prospect of parties seeking" Section 1782 discovery in the 51job matter. Dawson Decl. ¶¶ 21, 25.

### 4.   *Intel* Factor IV: The Subpoena Is Not Unduly Burdensome.

The final *Intel* factor looks to whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. "The scope of discovery permitted under § 1782 is coextensive with the scope of discovery permitted by Federal Rule of Civil Procedure 26(b)(1)." *In re Bayerische Motoren Werke AG*, No. MC-22-00016-PHX-SPL, 2022 WL 1092804, at *2 (D. Ariz. Apr. 12, 2022) (holding discovery requests that were "quite broad" were nonetheless "proportional to the needs of the case" and within "[t]he scope of discovery permitted under § 1782"). Under this standard, discovery must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The discovery requested by Petitioner here fully complies with the standard of proportionality and reasonableness. The Merger was a complex $4.3 billion corporate transaction wherein Respondent played an integral role. *See* Section II.B, *supra.* The Subpoena topics, which are comparable to the topics considered and granted in comparable cases,[5] are designed to seek only documents and information directly relevant to core issues in the Appraisal Proceeding, including: (i) the fairness of the original Merger price and the revised Merger price, and the process leading to their approval by the Special Committee and the Company's Board; (ii) why the Company permitted the Buyer Group to renege on the initial Merger proposal; (iii) financial analyses, email or other correspondence, meeting minutes, and any other materials used, reviewed, or prepared by, or provided to Respondent; (iv) Respondent's  communications with all other key stakeholders; (v) any alternative bids to acquire the Company; and (vi) the shareholders' approval of the Merger, including the absence of MoM Protection. These issues will be central in the Appraisal Proceeding and are appropriately subject to discovery through Section 1782.[6]

---

[5] *See, e.g.*, *In re Kingstown Partners Master Ltd.*, No. 21-MC-691-LTS, 2022 WL 1081333, at *6 (S.D.N.Y. Apr. 8, 2022) (scope of discovery was appropriate given "the substantial amount in controversy in the FGL Appraisal, Respondents' access to information relevant to that proceeding, and the parties' resources."); *In re Liverpool Ltd. P'ship*, No. 21-MC-86-CFC, 2021 WL 3793901, at *3 (D. Del. Aug. 26, 2021) ("The scope of the categories of subject matter sought by the subpoena is reasonable given the nature of and BofA Securities' role in the transactions at issue in the appraisal action.").

[6] The potential but uncertain possibility that Petitioner *may* obtain some of the discovery requested herein from a party in the Appraisal Proceeding is not a basis to deny this Application. *See FourWorld Event Opportunities, LP v. Houlihan Lokey, Inc.*, No. 21- mc-1019, ECF No. 40, at 26–27 (C.D. Cal. Nov. 22, 2021) (Jaffe Decl. Ex. L at 27) (holding a Section 1782 petitioner was "entitled to, just as someone would be in conducting discovery in a regular civil case in the United States, to test two productions against each other and . . . to ask you for documents to ensure that . . . what they are getting from the Company is exhausted and vice versa").

As for the requested testimony, the Application seeks testimony within the personal knowledge of Respondent that is relevant to the Merger, which is expressly provided for in Federal Rule of Civil Procedure 45. "The Rules of Civil Procedure themselves ensure that the length, time and place of the deposition do not impose an undue burden." *HRC Hainan Holding Co., v. Yihan Hu*, No. 19-mc-80277-TSH, 2020 WL 906719, at *15 (N.D. Cal. Feb. 25, 2020). For that reason, courts in this Circuit routinely hold that depositions of third parties are not unduly burdensome. *See, e.g.*, *Stockinger v. Toyota Motor Sales, U.S.A., Inc.*, No. 18-MC-00084-VAP (KSx), 2018 WL 6517106, at *2 (C.D. Cal. Aug. 15, 2018) ("Mrs. Casper has provided no evidence that her deposition would impose an undue burden on her, other than the mere assertion that this would be so. Thus, this Court finds that the relevance of Mrs. Casper's independent knowledge to the claims and defenses in the Stockinger Action outweighs any potential burden."); *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 532 (N.D. Cal. 2015) (denying motion to quash Rule 45 subpoena seeking deposition testimony); *Universal Church, Inc. v. Standard Constr. Co. of S.F., Inc.*, No. 14-CV-04568-RS (KAW), 2015 WL 6167968, at *4 (N.D. Cal. Oct. 21, 2015) ("Defendants' contentions that the deposition is irrelevant and harassing also lack merit. Plaintiff explains that they seek to depose Teague regarding the knowledge and observations he obtained during his investigation . . . . This is relevant to the claims asserted in this case."). As demonstrated by Respondent's involvement in the merger set forth in Section II.B., *supra*, attendance at a deposition will not be unduly burdensome.

Considering the Subpoenas' reasonable scope, Petitioners do not foresee any burden issues, but are willing to meet and confer in good faith with Respondent to address any concerns he might have.[7] Accordingly, the fourth *Intel* factor weighs in favor of granting the Application.

---

[7] If the Court has remaining concerns about undue burden, granting the Application will not preclude Respondent from bringing a motion to quash or modify the discovery sought.  If the

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.**     **CONCLUSION**

For the foregoing reasons, Petitioners respectfully request that the Court grant the Application for an order pursuant to 28 U.S.C. § 1782.

---

Court finds merit to such objections, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995).

Dated: September 21, 2023

By:   */s/ Thomas A. Gilson*

**BEUS GILBERT MCGRODER PLLC**
Thomas A. Gilson (AZ Bar No. 022460)
701 North 44th Street
Phoenix, Arizona 85008
Telephone: (480) 429-3000
tgilson@beusgilbert.com

*Counsel for Petitioners*

**REID COLLINS & TSAI LLP**
Yonah Jaffe*
420 Lexington Avenue
Suite 2731
New York, NY 10170
(212) 344-5200
yjaffe@reidcollins.com

*Additional counsel for Petitioner 507 Summit LLC*

**LABATON SUCHAROW LLP**
Ira A. Schochet*
140 Broadway
New York, NY 10005
(212) 907-0864
ischochet@labaton.com

*Additional counsel for Petitioner 507 Summit LLC*

**PALLAS PARTNERS (US) LLP**
Duane L. Loft*
Shireen Barday*
John McAdams*
75 Rockefeller Plaza
New York, NY 10001
Telephone: (212) 970-2300
Duane.Loft@pallasllp.com
Shireen.Barday@pallasllp.com
John.McAdams@pallasllp.com

**Pro hac vice* applications forthcoming

*Additional counsel for Petitioners Oasis Focus Fund LP and Quadre Investments, L.P.*